UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| TIMOTHY J. GAUTHIER AND GARTH BACHMAN, TRUSTEES OF THE OREGON AND SOUTHWEST WASHINGTON NECA-IBEW ELECTRICAL WORKERS AUDIT COMMITTEE, | Case No. 3:20-cv-00589-YY |
| Plaintiffs, | FINDINGS AND RECOMMENDATIONS |
| v. | |
| VITRO ELECTRIC, LLC., | |
| Defendant. | |

YOU, Magistrate Judge:

**FINDINGS**

Plaintiffs, Timothy Gauthier and Garth Bachman, are trustees of and comprise the Oregon-Southwest Washington NECA-IBEW Electrical Workers Audit Committee. Amended Compl. ¶ 1, ECF #6. They are the designated collection agents for the trustees of the International Brotherhood of Electrical Workers Harrison Electrical Workers Trust Fund ("Harrison Trust"), Edison Pension Trust ("Edison Trust"), National Electrical Benefit Fund ("NEBF"), International Brotherhood of Electrical Workers District No. 9 Pension Plan ("District 9 Pension Plan"), NECA-IBEW Electrical Training Trust ("Training Trust"), and the Barnes-Allison Labor-Management Cooperation Committee ("BALMCC"). *Id.* ¶ 2.

1 - FINDINGS AND RECOMMENDATIONS

Plaintiffs have brought this action against Vitro Electric, LLC ("Vitro") pursuant to Employee Retirement Income Security Act ("ERISA") provisions 29 U.S.C. §§ 1132 and 1145, seeking liquidated damages, interest, attorney's fees, and costs. Am. Compl. 7-8, ECF #6. Vitro has not filed an Answer or otherwise appeared in this matter, and the court entered an order of default on June 23, 2020. ECF # 12. Plaintiffs subsequently filed a Motion for Default Judgment (ECF #14), which should be GRANTED IN PART for the reasons discussed below.

## I. Subject Matter Jurisdiction

Federal courts are courts of limited jurisdiction. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). "It is to be presumed that a cause lies outside this limited jurisdiction, . . . and the burden of establishing the contrary rests upon the party asserting jurisdiction." *Id.* "If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3); *see also Fiedler v. Clark*, 714 F.2d 77, 78-79 (9th Cir. 1983) (recognizing that the court may *sua sponte* dismiss an action if it finds that subject matter jurisdiction is lacking).

Here, plaintiffs have brought one claim pursuant to ERISA provisions 29 U.S.C. § 1132 and one claim for breach of contract. The court has original jurisdiction over plaintiffs' federal claims pursuant to 28 U.S.C. § 1331 and supplemental jurisdiction over plaintiffs' breach of contract claim pursuant to 28 U.S.C. § 1367.

## II. Personal Jurisdiction

A district court "has an affirmative duty" to determine whether it has personal jurisdiction over a defendant before entering a default judgment. *In re Tuli*, 172 F.3d 707, 712 (9th Cir. 1999). "A judgment entered without personal jurisdiction over the parties is void." *Id*.

The Supreme Court has recognized two types of personal jurisdiction: general, or "all-purpose," jurisdiction, and specific jurisdiction. *Daimler AG v. Bauman*, 571 U.S. 117, 127-28, 132 (2014). "With respect to a corporation, the place of incorporation and principal place of business are 'paradig[m] . . . bases for general jurisdiction.'" *Id*. at 137 (citation omitted). "Those affiliations have the virtue of being unique—that is, each ordinarily indicates only one place—as well as easily ascertainable." *Id.* "These bases afford plaintiffs recourse to at least one clear and certain forum in which a corporate defendant may be sued on any and all claims." *Id.* Additionally, 29 U.S.C. § 1132(e)(2), which governs ERISA claims, provides:

> Where an action under this subchapter is brought in a district court of the United States, it may be brought in the district where the plan is administered, where the breach took place, or where a defendant resides or may be found, and process may be served in any other district where a defendant resides or may be found.

Here, Vitro is a limited liability corporation registered to do business in Oregon. Am. Compl. ¶ 11, ECF #6. Accordingly, personal jurisdiction exists over Vitro in this case. *See Daimler AG*, 571 U.S. at 137.

### III. Service

Before entering a default judgment, the court must "assess the adequacy of the service of process on the party against whom default is requested." *Bank of the West v. RMA Lumber Inc.*, No. C 07-06469 JSW, 2008 WL 2474650, at *2 (N.D. Cal. June 17, 2008). "[I]n the absence of proper service of process, the district court has no power to render any judgment against the defendant's person or property unless the defendant has . . . waived the lack of process." *S.E.C. v. Ross*, 504 F.3d 1130, 1138-39 (9th Cir. 2007).

Plaintiffs filed an affidavit showing service was executed on Vitro's registered agent on April 23, 2020. ECF #9. Plaintiffs have established adequate service in this case.

## IV. Pertinent ERISA Provisions

Under 29 U.S.C. § 1154:

> [e]very employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement.

Plaintiffs are entitled to bring a civil action for an employer's failure to pay. 28 U.S.C. § 1132.

If judgment is entered in favor of the plaintiffs, the "court shall award":

> (A) the unpaid contributions,
> (B) interest on the unpaid contributions,
> (C) an amount equal to the greater of—
> (i) interest on the unpaid contributions, or
> (ii) liquidated damages provided for under the plan in an amount not in excess of 20 percent (or such higher percentage as may be permitted under Federal or State law) of the amount determined by the court under subparagraph (A),
> (D) reasonable attorney's fees and costs of the action, to be paid by the defendant, and
> (E) such other legal or equitable relief as the court deems appropriate."

29 U.S.C. § 1132(g)(2). An award is mandatory if (1) the employer is delinquent at the time the action is filed; (2) the plan provides for such an award; and (3) the district court enters judgment against the employer. *Masonry Indus. Tr. Admin., Inc. v. Chris Lee Masonry, Inc.*, No. 3:14-CV-01570-HZ, 2016 WL 3396939, at *2 (D. Or. June 14, 2016).

## V. Plaintiffs' Claims and Damages

While upon an entry of default, the facts in the complaint are taken as true, "neither the default nor the allegation in the complaint can establish the amount of damages." *Lasheen v. Embassy of the Arab Republic of Egypt*, 625 F. App'x. 338, 341 (9th Cir. 2015) (cited pursuant to Ninth Circuit Rule 36-3). Accordingly, before the court can enter a default judgment for a sum that is uncertain, a plaintiff must prove damages. *TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 916-17 (9th Cir. 1987).

### A. First Claim: Late January, February, and March 2020 Contributions

Plaintiffs contend that Vitro made late payments of required employee benefit contributions for hours worked in January, February, and March 2020. In support of this claim, plaintiffs have submitted a Letter of Assent signed by Vitro in which the company agreed to comply with the Commercial/Industrial Labor Agreement between Oregon-Columbia Chapter NECA and Local Union 0048, IBEW. Centrone Decl., Ex. 1, ECF #16. Pursuant to the terms of that agreement, a copy of which plaintiffs also submitted, an employer such as Vitro is required to make contributions to the NEBF, Harrison Health and Welfare Fund, Edison Pension Trust, District 9 Pension Plan, Training Trust, and BALMCC. *Id*., Ex. 2, at 32-37, 39.

Contributions are delinquent if not received by the 15th day of the month following the month in which the hours were worked. Centrone Decl. ¶ 17, ECF #16; *see also id.*, Ex. 2, at 2 (Sect. 13.02). Delinquent payments are subject to:

(i) liquidated damages at 20% (*id*., Ex. 2, at 44);

(ii) interest at the rate of 10% per annum on delinquent contributions to the BALMCC, as well as attorney's fees and costs of collecting payment (*id.* at 40); and

(iii) interest on any delinquent amounts "at the statutory rate" plus reasonable attorney's fees (*id.* at 44).

Here, Vitro made did not make the January, February, and March 2020 contributions until April 17, 2020.[1] *Id.*, Ex. 5. Plaintiffs seek liquidated damages of 20%, specifically:

- $10,417.61, i.e., 20% of $52,088.05 in contributions due for January 2020;

- $10,171.04, i.e., 20% of $50,855.18 in contributions due for February 2020, and

- $7,713.34, i.e., 20% of $38,566.72 in contributions due for March 2020,

---

[1] Vitro made payment after the suit was filed. Larkin Decl. ¶ 6, ECF #15.

5 - FINDINGS AND RECOMMENDATIONS

totaling $28,301.99.  *Id.* 4-5; *id.*, Ex. 2, at 2.

Plaintiffs also seek interest on delinquent contributions at 10% from the first day of the month following the date on which the contributions were due, specifically:

- $1,090.72 for non-payment of January 2020 contributions, and
- $532.45 for non-payment of February 2020 contributions,

totaling $1,723.18.  *Id.* at 4-5.

The total amount of late contributions, $144,069.11, is not in dispute.  In fact, Vitro paid the late contributions on or about April 17, 2020, after the original complaint was filed.  Am. Compl. ¶ 23, ECF #6.  Plaintiffs' liquidated damages calculation is also correct: the sum of $10,417.61 (i.e., 20% of $52,088.05), $10,171.04 (i.e., 20% of $50,855.18), and $7,713.34 (i.e., 20% of $38,566.72), equals $28,301.99.

However, plaintiffs have not adequately explained their interest calculation of $1,723.18.  The plan calls for interest on delinquent BALMCC contributions at the rate of 10% per annum and interest on all other delinquent amounts at the "statutory rate."  The statutory rate is prescribed by section 6621 of the Internal Revenue Code.  29 U.S.C. § 1132(g)(2)(E).  Pursuant to 26 U.S.C. § 6621, the underpayment interest rate is the federal short-term rate plus 3%, which constitutes 5% for the first and second quarters of 2020.  *See* https://www.irs.gov/newsroom/interest-rates-remain-the-same-for-the-second-quarter-of-2020 (last accessed Oct. 06, 2020).

Plaintiffs have produced spreadsheets showing their interest calculations for January and February 2020.  Centrone Decl., Ex. 5, at 1-2, ECF #16.  The BLMCC contribution amount for January 2020 is $394.90.  Plaintiffs assert that interest is "calculated on the total amount due at the rate of ten (10%) per cent annum from the first day of the month following the date on which contributions were due."  *Id.* at 4-6.  Elsewhere, plaintiffs note that the due date for January 2020

contributions was February 15, 2020. *See id*. 4 ("Interest due for the non-payment of January 2020 due February 15, 2020 through April 17, 2020 is $1,090.72."). Plaintiff calculate interest for late BLMCC contributions compounded monthly for "Month 1" and "Month 2" at $4.31 per month for a total of $8.62; however, it is unclear what "Month 1" and "Month 2" signify. At ten percent, interest compounded monthly on $394.90 for two months, between February 15 and April 17, 2020, is $8.15. The other unpaid contribution amounts total $51,693.15 ($1,738.60+$7,044+$14,392.20+$2,566.85+$19,524.90+$2,741.48). *Id.*, Ex. 5, at 1. At five percent, interest totals $531.64, when compounded monthly between February 15 and April 17, 2020.

For February 2020, the BALMCC contribution was $393.60, and the other contributions were $50,461.58. Ten percent interest on $393.60 and five percent interest on $50,461.58 between March 15, 2020, and April 17, 2020, equals $2.45 and $314.38, respectively.

In sum, plaintiffs are entitled to $856.62 in interest.

### B. Second Claim: Late January, February, and March Wage Withholding

Plaintiffs allege a common law breach of contract claim on grounds that defendant failed to timely pay wage withholding for union dues, vacation, and administrative funds for January through March 2020, totaling $21,041.88. Centrone Decl., 5, ECF #16. Payment was finally received after suit was filed on April 17, 2020. Am. Compl. ¶ 31, ECF #6.

Pursuant to the labor agreement, "all employee wage withholdings (vacation, union dues, credit union, PAC), are due and payable on or before 15th the day of each month covering the hours worked by each employee through the last full payroll period in the prior calendar month." Centrone Decl., Ex. 2, at 43, ECF #16. Again, the amounts at issue were paid by Vitro on April 17, 2020, and are not in dispute. According to the plaintiff's spreadsheet showing the damages'

calculations, the withholding amounts for January 2020 total $7,645.29 (i.e., $1,711.65+$296.18+$3,655.30+ 1,525.23+$456.93), the withholding amounts for February 2020 total $7,610.26 (i.e., $1,704.34+ $295.20+$3,638.88+$1,516.98+$454.86), and the withholding amounts for March 2020 total $5,696.77 (i.e., $1,266.35+$225.67+ $2735.67+$1127.13 +$341.95). Centrone Decl., Ex. 6, at 1, ECF #16.

However, plaintiffs' interest calculation at nine percent is unsupported. Because the agreement indicates that interest on wage withholding is calculated at the "statutory rate," a five percent interest rate applies. At five percent, interest on the January 2020 withholdings is $65.96, interest on the February 2020 withholdings is $32.76, and interest on March 2020 withholdings is $1.56. Plaintiffs are therefore entitled to $100.28 interest on their second claim.

## VI. Eitel Analysis

The district court's decision on whether to enter a default judgment is a discretionary one. *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980). In exercising its discretion, the court considers the following factors under *Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986):

> (1) the possibility of prejudice to the plaintiff, (2) the merits of the plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect; and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

### A. Factor One: Possibility of Prejudice to Plaintiff

In assessing this factor, courts have considered whether the plaintiff would be without recourse for recovery if the motion for default judgment is not granted. *See, e.g.*, *J & J Sports Prods., Inc. v. Cardoze*, No. C 09–05683 WHA, 2010 WL 2757106, at *5 (N.D. Cal. July 9, 2010); *PepsiCo, Inc. v. California Sec. Cans*, 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002). Currently, plaintiffs have no recourse to obtain relief other than through this action.

### B. Factors Two and Three: Merits of Claims and Sufficiency of Complaint

Upon entry of default, this court must take the well-pleaded factual allegations of the complaint as true. *See Geddes v. United Fin. Grp.*, 559 F.2d 557, 560 (9th Cir. 1977) ("The general rule of law is that upon default the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true."); *Cripps v. Life Ins. Co. of N. Am.*, 980 F.2d 1261, 1267 (9th Cir. 1992) ("In reviewing a default judgment, this court must take the well-pleaded factual allegations of [the complaint] as true.").

The complaint and supporting documents establish that Vitro signed a Letter of Assent in which the company agreed to abide by the terms of the Commercial/Industrial Labor Agreement, which require contributions and wage withholding. The contribution and withholding figures were provided by Vitro itself, so they are not in dispute. According to ERISA statutes and the terms of the agreement, Vitro owes those liquidated damages, interest, attorney's fees, and costs.

### C. Fourth Factor: Sum of Money at Stake

Under the fourth *Eitel* factor, "the court must consider the amount of money at stake in relation to the seriousness of [d]efendant's conduct." *PepsiCo*, 238 F. Supp. 2d at 1176-77; *see also J&J Sports Productions*, 2010 WL 2757106, at *5 ("a large sum of money at stake would disfavor default damages," such as a request for $114,200 in damages); *Board of Trustees of the Sheet Metal Workers v. Vigil*, No. C 07-01508 WHA, 2007 WL 3239281, at *2 (N.D. Cal. Nov. 1, 2007) ("[D]efault judgment is disfavored if there were a large sum of money involved").

The amounts at issue in this case are not relatively large.

### D. Fifth Factor: Possibility of Dispute Over Material Facts

In addressing the fifth factor, the court considers whether a dispute concerning material facts exists. As mentioned above, "[u]pon entry of default, all well-pleaded facts in the

complaint are taken as true, except those relating to damages." *PepsiCo*, 238 F. Supp. 2d at 1177. Thus, "[t]he fifth factor . . . weighs in favor of default judgment when the claims in the complaint are well-pleaded." *Joe Hand Prods. v. Holmes*, No. 2:12–cv-00535–SU, 2015 WL 5144297, at *7 (D. Or. Aug. 31, 2015). Otherwise stated, "[b]ecause all allegations in a well-pleaded complaint are taken as true after the court clerk enters default judgment, there is no likelihood that any genuine issue of material fact exists." *Elektra Entm't Grp., Inc. v. Crawford*, 226 F.R.D. 388, 393 (C.D. Cal. 2005).

Again, Vitro provided the amounts that were due, so those figures are not at issue and the possibility of a dispute over material facts is low, if such a dispute exists at all.

### E.  Sixth Factor: Excusable Neglect

The sixth factor pertains to the possibility that the default resulted from excusable neglect. Here, no evidence of excusable neglect exists and, as noted above, Vitro's registered agent was served with a copy of the summons and complaint.

### F.  Seventh Factor: Policy Favoring Decision on the Merits

Factor seven is "the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits," specifically the policy that "[c]ases should be decided upon their merits whenever reasonably possible." *Eitel*, 782 F.2d at 1472. However, "this policy, standing alone, is not dispositive, especially where a defendant fails to appear or defend itself in an action." *Joe Hand Promotions, Inc. v. Machuca*, No. 2:13–cv–1228 GEB KJN, 2014 WL 1330749, at *6 (E.D. Cal. Mar. 31, 2014). Where a defendant has failed to answer a complaint, it "makes a decision on the merits impractical, if not impossible." *PepsiCo*, 238 F. Supp. 2d at 1177. Rule 55 allows the court to terminate a case before hearing the merits when a defendant fails to defend an action. Fed. R. Civ. P. 55. "Thus, the preference to decide cases on the merits

does not preclude a court from granting default judgment." *PepsiCo*, 238 F. Supp. 2d at 1177 (internal quotation omitted).

Here, a decision on the merits is impossible because defendant has failed to appear, plead, or defend this action. Additionally, all other factors weigh in favor of a default judgment. Therefore, the seventh factor is not dispositive, and the court is not precluded from entering a default judgment against defendant.

## VII. Attorney's Fees

Plaintiffs seek attorney's fees of $2,980.00, including 8.8 hours by attorney Linda Larkin at $225 per hour and 10 hours of time by legal assistant Amy Mathis at $100 per hour. Larkin Decl., Ex. A, ECF #15. Attorney's fees are authorized by 29 U.S.C. § 1132(g)(2) and the terms of the Commercial/Industrial Labor Agreement in this case. Centrone Decl., Ex. 2, at 44, ECF #16. Work performed by non-attorneys, such as paralegals, are awarded at market rates, if this is "the prevailing practice in a given community." *Trustees of Const. Indus. & Laborers Health & Welfare Tr. v. Redland Ins. Co.*, 460 F.3d 1253, 1257 (9th Cir. 2006).

Generally, attorney's fees are calculated using the lodestar method, i.e., by multiplying the number of hours worked by the reasonable hourly rate. *See Perdue v. Kenny A.*, 559 U.S. 542, 551 (2010) (holding "the lodestar approach" is "the guiding light" when determining reasonable fees). In determining the "reasonable hourly rate to use for attorneys and paralegals[,]" the court looks to the "prevailing market rates in the relevant community." *Gonzalez v. City of Maywood*, 729 F.3d 1196, 1205 (9th Cir. 2013) (citations and internal quotation marks omitted). The court also excludes hours "that are excessive, redundant, or otherwise unnecessary." *McCown v. City of Fontana*, 565 F.3d 1097, 1102 (9th Cir. 2009) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983)). The party seeking fees bears "the

burden of documenting the appropriate hours expended in the litigation, and [is] required to submit evidence in support of those hours worked." *United Steelworkers of Am. v. Ret. Income Plan for Hourly-rated Emps. Of Asarco, Inc.*, 512 F.3d 555, 565 (9th Cir. 2008) (quotations omitted).

For purposes of determining the prevailing market rate, the relevant community is the "one in which the district court sits." *Davis v. Mason County*, 927 F.2d 1473, 1488 (9th Cir. 1991), *superseded by statute on other grounds as recognized by Davis v. City & County. of San Francisco*, 976 F.2d 1536, 1556 (9th Cir.1992). This court uses the most recent Oregon State Bar Economic Survey as a benchmark for comparing an attorney's billable rate with the fee customarily charged in the locality. *Precision Seed Cleaners v. Country Mut. Ins. Co.*, 976 F. Supp. 2d 1228, 1244 (D. Or. 2013); *see also Copeland-Turner v. Wells Fargo Bank, N.A.*, No. 11-cv-37-HZ, 2012 WL 92957, at *2 (D. Or. Jan. 11, 2012) ("Judges in the District of Oregon use the Oregon State Bar Economic Survey . . . as a benchmark for assessing the reasonableness of hourly billing rates."). The Economic Survey sets forth rates charged by Oregon attorneys in the relevant year, including rates specific to communities such as Portland.

Larkin has submitted an itemized list of the work that she performed on this case and the time spent on each task. Larkin Decl., Ex. A, ECF #15. The work does not appear excessive or duplicative. Larkin has been handling cases like this dispute for 40 years. Larkin Decl. 3, ECF #15. The median rate for Portland attorneys with over 30 years of experience is $300. *See* OREGON STATE BAR 2017 ECONOMIC SURVEY 40 (2017). Considering Larkin's experience, the requested hourly rate of $225 is reasonable. The requested hourly rate of $100 for a legal assistant also is in line with similar rates approved in other cases in this district. *See Oregon Laborers-Employers Health & Welfare Tr. Fund v. Baseline Indus. Constr., Inc.*, No. 3:19-CV-

1343-IM, 2019 WL 6329336, at *4 (D. Or. Nov. 26, 2019) (approving rate of $90 and citing other cases); *Wilson v. Decibels of Oregon, Inc.*, No. 1:17-CV-01558-MC, 2019 WL 6245423, at *4 (D. Or. Nov. 22, 2019) (approving rate of $90 for legal assistant).

Plaintiffs seek costs of $661.35, specifically, $400 for the filing fee, $195 in service fees for the original complaint, $65 in service fees for the amended complaint, $1.35 for copies. Larkin Decl. 4, ECF # 15. "Unless a federal statute, these rules or a court order provides otherwise, costs—other than attorney's fees—should be allowed to the prevailing party." Fed. R. Civ. P. 54(d)(1). "Rule 54(d)(1) creates a presumption in favor of awarding costs to the prevailing party, and a district court has limited discretion to deny fees under the rule." *Goldberg v. Pac. Indem. Co.*, 627 F.3d 752, 758 (9th Cir. 2010). Additionally, the Commercial/Industrial Labor Agreement allows plaintiffs to recover the costs of this litigation. Centrone Decl., Ex. 2, at 44, ECF #16. Thus, plaintiffs are entitled to $661.35 in costs.

## RECOMMENDATIONS

Plaintiffs' Motion for Default Judgment (ECF #14) should be GRANTED IN PART as follows:

**Claim One (Late January, February, March 2020 Contributions):**

Liquidated damages of $28,301.00, and interest of $856.62.

**Claim Two (Late January, February, March 2020 Wage Withholdings):**

Interest of $100.28.

**Attorney's Fees:** $2,980.00.

**Costs:** $661.35.

**SCHEDULING ORDER**

These Findings and Recommendations will be referred to a district judge. Objections, if any, are due Friday, November 20, 2020. If no objections are filed, then the Findings and Recommendations will go under advisement on that date.

If objections are filed, then a response is due within 14 days after being served with a copy of the objections. When the response is due or filed, whichever date is earlier, the Findings and Recommendations will go under advisement.

**NOTICE**

These Findings and Recommendations are not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Any Notice of Appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of a judgment.

DATED November 6, 2020.

/s/ Youlee Yim You
Youlee Yim You
United States Magistrate Judge